Our next case for argument this morning is N. Y. C. C. v. Barr. Mr. Blank. Good morning, Your Honors. May it please the Court, Dylan Glenn on behalf of the petitioner, N. Y. C. C. N. Y. C. C. fled Mexico in December of 2014 to escape her abusive partner and the father of her second child, E. G. E. G. stalked, menaced, and threatened N. Y. C. Mr. Glenn, before we get into the merits, I'm concerned about anonymity. As your brief recognizes, there was a provisional anonymity order entered, but the merits panel has to decide whether to maintain it. Your brief has a very brief discussion of this issue, and let me tell you what my worries are. The first is that the Board of Immigration Appeals' opinion in this case uses your client's full name. It sounds like the cat is out of the bag. Why should we be anonymous when the full name is already in the public record? You might want to address that. Yes, Your Honor. Admittedly, the Board does use my client's full name. However, those opinions are not often published as this opinion may be. And this Court has long recognized in other cases, such as Doe v. Gonzalez, Doe v. Blue Cross, RRD, WGA, that when there is a threat to the litigant's life or safety, that proceeding under a pseudonym can be appropriate. And furthermore— Well, that's actually my second question. The theme of your client's claim is that her ex-partner knows exactly who she is and where her family lives in Mexico. So what is anonymity adding with respect to the potential threat? The anonymity seems to affect the general public, but not the potential threatener. No, Your Honor. I think the anonymity would affect his ability to find her in this country, in which case the threat— Of course, if she loses in this appeal, then she won't be in this country. Correct. Right. So your concern is she wins in the appeal and her former partner comes looking for her in the United States? That's correct, Your Honor. Okay. As I was saying, E.G. stalked, menaced, and threatened N.Y.C.C. over the period of many months, along with other men. E.G. is a cartel member. N.Y.C.C. testified credibly to this fact on the record, providing numerous factors that she recognized in E.G. This testimony was corroborated by that of her mother and of the boss, and by hundreds of pages of documentary evidence that show the prevalence of the cartel in Mexico, as well as what a cartel member looks like. In determining whether she— E.G. was a member, I think it's fair to conclude, of the cartel during the relevant period in Mexico, too, right? Yes, Your Honor. But the threats never turned into any kind of action, manifested themselves any beyond the drive-bys and the statement, we're going to grab the kids from school one way or another, at a time that he was a member of the cartel then, too, right? That's correct, Your Honor. And that actually raises a good point, that the unfulfilled threats, they were in fact unfulfilled. And that's something that the board and the immigration judge highlight when doing the past persecution argument. But then when they do the well-founded fear of future persecution analysis, they don't highlight that at all. And that kind of selective highlighting, the court has recognized in Aielli, is a hallmark of a non-reasoned analysis. That when the agency uses a piece of evidence against the petitioner, and then does not use that same piece of evidence when it would be for the petitioner, and unfulfilled threats are evidence of a well-founded fear of future persecution, as the court recognized in RRD, that that means the analysis is not reasoned and the court must remand. But you seem, if I read your brief right, you seem to place an awful lot of weight on his membership in the cartel in the event that she would be returned to Mexico, right? And that it's not as simple as threats in the past. It's the threats in the past combined with the fact that he's a member of this cartel, right? That's what you want us to really put a lot of weight on. But the cartel status didn't convert the threats into anything beyond what we just observed while she was in Mexico. Yes, Your Honor. It didn't during that period, but the court has recognized... So why would his cartel status, why would it turn this into a persecution situation if she returned, as opposed to some type of horribly unfortunate instance of family revenge or something, you know, because she took the kids to Indianapolis? Yes, Your Honor. So the cartel status goes to his ability to fulfill those threats. And I understand your question that, you know, he hasn't fulfilled them yet. Why do we think it's going to happen when she gets back? But that question assumes simply that because he hasn't fulfilled them that he never will. And the court has... He didn't fulfill them while he was a member of the cartel. He's still a member of the cartel. Right. And that's the point that you want. So the before and after is no different. He's a member of the cartel before, today, and presumably will remain. But when he had an opportunity to act on the threat, he did not. Not to the, at least according to the board, not to the level that rose to persecution. Right, Your Honor. And as I was saying, I think the question assumes that because he hasn't, he never will. And the court has recognized that the fact that you've escaped persecution by chance or by hiding is not enough to sustain a reasoned analysis. And I think that's what we have here. She has escaped based on chance and by fleeing. I must say, counsel, I don't understand why a threat from a domestic partner is persecution. Familial abuse is undoubtedly a worldwide problem. It happens a lot in Chicago, alas. But we don't call it persecution. Why is it persecution when it happens in Mexico? It's persecution in this case for two reasons. First, it's not just the threat from the domestic partner. The record shows that NYCC was stalked not just by her domestic partner, but by other members of the cartel, sometimes with her domestic partner and sometimes without her domestic partner. Moreover, this is persecution unlike in Chicago because the Chicago police will respond to your claims of domestic violence. In this case, NYCC went to the police. Not only did they say they were unable to do anything about it, they were unwilling to do anything about it. They said that if she was being stalked by EG, she must have done something wrong. And they didn't even allow her to file a report. So that's what takes this from being a situation of domestic violence in Chicago to being a situation of being menaced by a cartel with the acquiescence of the government. Yes, but I still don't see why it's persecution. Statute talks about persecution on the basis of politics or religion. It isn't that. It is a risk, certainly, but on the basis of a domestic relationship or a former domestic relationship or presence of a child, which is not a statutory criterion. Your Honor, I respectfully disagree. The statutory criteria calls for a cognate on the basis of a social group, and social groups can be defined based on immutable character. The social group of somebody who was formerly the domestic partner of this person is not a group. It's just who the plaintiff is. You don't talk about our en banc opinion in Sese, but that's the broadest definition of social group in any circuit, and the court was very careful to say it doesn't include anybody who is identified just by virtue of the threat. I mean, that's what's going on here. She's a threatened person, and Sese holds that that doesn't identify a member of a social group. Your Honor, there are two social groups in this case, and the first is the first I believe the one you're referring to is women in relationships they cannot leave, but there's also mothers of cartel members' children, which would have a threat from the cartel of the father as well as rival cartels, which would be different. That's exactly what I'm saying about Sese. It says people who are threatened, people who are identified by virtue of being threatened are not a social group. That's not how you identify a social group. Your Honor, again, I respectfully reject the premise. You can reject our en banc holdings, but it won't make them go away. Your Honor, having a child is not the same as having a threat, and either way the board didn't reach this question, and so this court can't affirm on those grounds under Chenery. More to the point, the board's opinion lacks a reasoned analysis on the central claim of this case, or excuse me, the central fact in this case that EG is, excuse me, that we did not establish that EG is in a cartel. As the court in Sese en banc recognized, when the board's one-sentence conclusory analysis is not enough, and that is exactly what happened in this case. The agency gave the analysis of EG's cartel status three sentences across two decisions, taking her credible testimony and then saying that the clear conclusion of that testimony was merely speculative. However, it didn't identify any of the facts in her testimony. It didn't identify any of the facts in her mother's testimony or her boss's testimony or her child's testimony. It didn't look at any of the evidence in any of the documents that showed the prevalence of the cartel in Mexico or that the type of behaviors that EG was characterizing, driving brand-new cars, multiple brand-new cars, staying out all night. Now, would you get back to the earlier line of questioning that Judge Easterbrook raised, that she hadn't been persecuted, she'd just been harassed. So what the cartel doesn't make any difference in those. Your Honor, that goes to the past persecution discussion. But under the well-founded fear of persecution, she can still have grounds for asylum. And as I think I was answering. She speaks Spanish, right? She does speak Spanish. Is there any place in the country she couldn't relocate to? I'm sorry, could you repeat the question? Is there any place in the country she could not relocate to? Your Honor, it would be unsafe and unreasonable for her to relocate anywhere in the country. And the agency's analysis of reasonability was clearly unreasoned because, again, it relied only on a citation to one case that determined what was unreasonable. And what is unreasonable does not logically follow as to what is reasonable. So for that, under the relocation analysis, this Court must remand as it is clearly not reasonable for that question. Explain that. Why couldn't she relocate? She can't relocate safely because she faces a threat from cartels who are prevalent across the country. And she can't relocate reasonably because she has no family elsewhere in the country. But regardless, the Board did not provide a reasoned analysis of this question. And I believe I'm out of time for what I would like to reserve. Thank you, Your Honor. Thank you, Mr. Glenn. Mr. Ravine. Good morning, Your Honor. Arthur Rabin on behalf of the Attorney General. I'm sure you can tell where I'm going to start. Your brief doesn't even mention the anonymity question, although our provisional order asks the parties to brief it. Your Honor, there is a footnote. Alien talks about it for less than a page. Your Honor, the very last page of our brief, I dropped a footnote saying I don't want to take a position. It's on page 42. Yeah, but the Court does want you to take a position. That's why the provisional order told the parties to address it in their briefs. Yes, Your Honor, and I do apologize for that. So, I mean, the government's position is that this case, they did not ask for a sealed record in front of the agency. The agency decision has been out there for both the IJ's decision and the Board's decision has been out there for years. Now, how easy is it to access the Board of Immigration Appeals decision, which uses the alien's real name? It's not easy, Your Honor. You have to have an account with the Board, with the Executive, the Office of Immigration Review, to pull it down. I tried, by the way. I looked on Lexis and Westlaw, and it is not on Lexis and Westlaw. It's not, Your Honor, and you have to have an account, you have to pull it down, but that doesn't mean that others have not heard of it. And I suspect that her former domestic partner does not have an account with the Office of Immigration Judges. No, Your Honor, but, I mean, he knows who she is, and at this point, he knows the names of his child. He signed the birth certificate. So to say that they must be protected from knowing, he must be not knowing it, but, I mean, I think the horse are out of that barn. Turning to the merits of this case, Your Honor, with your permission, the agency gave a number of alternative dispositive denials for asylum in this case. They first found that there's not only no past persecution based on the level of harm, there is also no well-founded fear of persecution, which is the initial denial. Then they said, well, even if she could show past persecution and or a well-founded fear of persecution, there is no nexus to a protected ground, meaning she did not establish that the fear, the mistreatment that she claims to fear is based on a protected ground in the asylum statute, as Your Honor mentioned, whether it's religion, politics, or things like that. They also then said, well, even if she does show well-founded fear on account of a protected ground, that is, if she does show nexus, then the third level of the cutoff is, well, she could, as Your Honor said, relocate, and reasonably so, because that is her home country. It is unreasonable to ask her to relocate all the way to the United States but not within her own country, where she actually knows the culture, and being a waitress, she has a very easy way to find a job there. Mr. Rabin, can I ask you to react to a point that Mr. Glenn makes that I think is pretty well stated, and that is, what in the world is the immigrant here to do to show that her former domestic partner is a member of a cartel beyond what she did? Well, Your Honor, I mean, the facts are the facts, so what are the facts? Well, she could only show speculation. She could show that she supposedly comes from an area where she knows cartel members because they're everywhere, but yet she meets and falls in love with this guy, and she doesn't know that he's a cartel member. I mean, you say speculation, but didn't she swear under oath, and didn't her mother and others come forward with information that said this fellow is a member of a cartel? I worry that there's some sort of burden out there that just has a complete air of unreality to it on a point like this. I mean, this court reviews under whether or not the evidence compels the opposite conclusion of what the agency arrived at, whether a reasonable fact-finder would be compelled to find that he is a cartel member, which is the opposite of what the agency found. Now, the agency looked at it and said, well, okay, so what is the basis for her claiming he's a cartel member? He doesn't have the indicative tattoos. He doesn't wear the clothes. I mean, his cousins supposedly wear the clothes, but he doesn't. She claims that, well, you know, he has cash, a lot of cash. What do you see in your other case? I'm just trying to think what in the world could she do? Well, I mean, Your Honor, then she could show. There's no membership roster. No, it's not that, Your Honor, but she could show that he told her he was in a cartel, which never happened, that somebody else told her he was in a cartel, which never happened, or that she actually saw him committing criminal acts, which, again, never happened. It seems unlikely. But, I mean, if he brought the loot home, then at that point she could have seen that, you know, wow, maybe he was an accessory or something to his cousin's act. I mean, at most, Your Honor, even if we inflate the evidence to the most that we possibly can, it is possible that his cousins were part of a cartel and he just hung around with them. Now, you know, the fact that he works at a car wash and they may be running that car wash is also indicative that he's not in it, but his relatives are. So at this point, Your Honor, you know, to say that there's past persecution, well, all we have here is that he made the single threat, and that was to take the children, and then that he menaced her or harassed her, and his cousins did, by following her around occasionally. I mean, that's a different argument, right? That's a different argument than, you know, she hasn't come forward with any extrinsic evidence at all that he's a member of a cartel. The persecution argument is separate. Oh, yeah, I mean, the past persecution argument, I mean, petitioners say it's tied in to that argument because they claim that the threat is increased. Right, I asked Mr. Glenn about that. You heard what he had to say. And so I would say no, it's not, because, you know, even though he was a member supposedly of a cartel, he never hurt her, never hurt anyone, never hurt the children. She never saw him being violent. In fact, when they broke up, he said, go, that's fine, go. And then there was a one-year separation where they, well, almost a year, where they didn't even see each other. I mean, if this guy is such a hardcore person that's trying to get her back and is threatening her, then why is there a year that goes by with nothing, no contact? You know, Your Honor, I think this is a domestic dispute that went out of hand. And, yeah, he obviously wanted his son back. He wanted contact with his child. She prevented that. Now, to say that, you know, if she returns, he's going to hurt her, well, how can we say that? He never hurt her in the past. He had years to hurt her. He had years to kidnap the child or act on the unfulfilled threat to kidnap the child. Again, never happened. So at this point, you know, Petitioner claims, well, you know, we still show a nexus to a protected ground because she was in a relationship with a cartel member. But, again, as Judge Easterbrook pointed out, she is defining the cognizability of that group by the very fact of the persecution. So we still don't show. A Shineri argument has been made. Do you think the board resolved the social group question? Oh, no, Your Honor. I mean, they didn't exactly deal with the cognizability. Well, then, given Shineri, we won't either. Well, Your Honor, nonetheless, the Mexican women in a relationship group that aren't able to leave the relationship holds no water because she didn't leave the relationship. She left it for years. And yet somehow they claim that she is unable to leave that relationship. She was able to move on her own, get her job back, have no contact with him for a year. So we would say that she's not part of that group. PSG number two, mothers of a Mexican cartel member's children. You know, again, this is where, Your Honor, we get into whether or not he was a cartel member. So to say that he was a cartel member and not just associated with a cartel is a different story. The fact that he was hanging out with his cousins, which he said are family members. He told her, they're my family members. The fact that he's hanging out with them does not make him a cartel member. What's the government's position on Liu versus Holder? Was it correctly decided, the Second Circuit decision? I'm not familiar with that, Your Honor. Can you give me the holding? Well, I think it goes to this point about the cartel. And that is if the alien needs to make a showing on a particular point, here a cartel status, there needs to be some articulation of what is expected of the individual to make that showing, to corroborate the contention that this EG is a member of a cartel. See, what troubles me about this is you just say, you know, she hasn't proved it. She hasn't proved it. And I think what in the world is she supposed to do? Think about who she is. Think about the means that she has. Well, Your Honor, I mean, there are— I just don't understand why you're fighting the cartel point that much here. I really don't. Well, I just—I am telling you what the evidence shows. Now, as a legal point— But what's she supposed to do? That's the question I have. Okay. As a legal point, you know, counsel says, well, you know, they should have made him—should have issued a corroboration ruling, and then she could have had an opportunity to corroborate. That's rude. Right. Exactly. But then they also say, well, but then she couldn't have corroborated it anyway. So that's a catch-22. Well, Your Honor, the— Well, no, I can think of a way. I can think of a way. You could say, look, do you have any photographs? Do you—are there any other affidavits from non-family members that you can come forward with that speak to his associations? I don't know whether it's reasonable or not, but it's not an all-or-nothing proposition, but here she doesn't have a clue what she's supposed to do other than what she did. Well, Your Honor, she had counsel. And the fact that she didn't meet her burden to show—I mean, so we're talking about two different things, burden of production, burden of persuasion. Corroboration is the burden of production. Does she come forward with enough evidence to direct significant evidence to show what she says claims happen and then whether or not that evidence actually meets the standard? Well, here the agency said, okay, you've come forward with all the evidence that you say you can possibly produce, yet it doesn't meet the standard. So, Your Honor, we're talking about two separate things. And, you know, I'd just like to point out that issue was never exhausted before the agency. You know, they never told the agency, well, you should have given us an opportunity to corroborate. I mean, what else do you want us to show? Well, that argument is nowhere in their two briefs before the board. So as a jurisdictional issue, that's not before the court. So finally, the relocation issue. You know, in this particular case, the agency—Counselor keeps pointing out the agency did not do what the governing regulation says. Well, the IJ's decision specifically goes into the regulation, goes into the factors that are required by the relocation reg. They specifically go into whether or not it's feasible for her to move to her country of origin. And Mexico is a large country. The cartel's reach is not absolute. I mean, for Christ's sakes, she doesn't even know where this persecutor is. At the time of the hearing, they have had no contact for years. So for her to say, I can't relocate somewhere based on the fact that he's located somewhere, well, she doesn't know where he is. And he's not come forward and contacted her mother for years. Now, his mother has come a few times to say, hey, can I see my grandchild? And her mother said no. Now, the evidence also shows that there is some—one of his cousin's daughters may be coming there and asking— to reach her in the United States. Again, denied. So, you know, as a father without a child, obviously he's been prevented by her from even seeing or contacting her. There's also evidence that she has an aunt, Aunt Permel, which is mentioned in the mother's affidavit, that she could move to. All these things show—I mean, the fact that she moved to the United States to live temporarily with her dad shows that she is the kind of person that can. She's a strong person. She stood up to him when he—when she demanded child support from him and he refused. We know that she can take care of herself. She can take care of her children. The fact that she's living in Indianapolis now, she indicates she's made a life there in the United States. So— Well, there's no evidence that she couldn't relocate, taking the other side. Well, taking the other side, Your Honor, the evidence is she speaks Spanish. She has a job that is easily translatable in any city. She has relatives, this aunt that she has that's mentioned in the mother's affidavit that she's never contacted. She's never attempted to move, which is, I guess, negative evidence. But at some point, you know, the Mexican cartel can't reach her ever. It's not the CIA. I see my yellow lights on, so with the court's permission, I'd just like to conclude. Substantial record evidence supports the denial of asylum and withholding in this case. As far as cap protection, that was waived by lack of briefing. Given that Petitioner has not shown past persecution or well-founded fear, she did not qualify for asylum. And if she had established past persecution or well-founded fear, there is no nexus to a protected ground. And even if there was a nexus, then she has not established she could not relocate within Mexico. Petitioner at this point has raised, in our opinion, nothing that will compel a reasonable fact finder to conclude otherwise. Subject to, of course, questions. Thank you, Your Honor. Thank you, Counsel. Anything further, Mr. Kline? Yes, Your Honor. The government spent most of its time describing why E.G. might be in the cartel. And never mind the fact that there's nothing in the record to indicate that Mexican cartels tattoo their members. The agency didn't provide any of the reasons that the government says are the reasons that E.G. is not in a cartel.  In fact, it merely said that the petitioner was credible, but that the clear conclusion was speculative. It didn't demand any corroborating evidence. It didn't outline what that corroborating evidence would be. And it didn't determine whether that corroborating evidence would be reasonably available, which it almost certainly would not be because the cartel, as Your Honor pointed out, does not keep membership roles or issue membership cards. This determination and the lack of reasoned analysis about it is central to this case because it infects each of the other important grounds. When it comes to a well-founded fear of persecution, whether he is in the cartel informs whether the threat is reasonable to the petitioner. When it comes to reasonable and safe relocation, it informs whether his cartel has the ability to locate her throughout the country or whether a rival cartel could do so. And in terms of reasonability, as I said, the court did not provide a reasoned analysis of it. It didn't go through the factors that the statute requires it to do so, which this court in Orokill held was enough for remand. But more than that, it rests its entire conclusion on a faulty reading of a case. And what's more, when looking at Cece, it's clear that she cannot relocate reasonably because, although she may speak Spanish and have a transferable set of human capital skills, she is a single mother living with three children in a country where cartel violence has led to an increase in misogynistic violence. There's no cases, though, that say that doesn't meet any cases that you know of. We said, well, they can't relocate because of that? Yes, Your Honor. In Cece, they said that the woman could not relocate because she is a single woman who would be a target throughout the country, which would be the same here. That's not shown. There was no—was there any evidence to show that? Yes, Your Honor. The record shows that the cartel has—cartels have power throughout the entire country, and it also shows the treatment of women throughout Mexico, and I believe that's at AR 500 through 589. Your Honor, I believe I'm out of time, so I ask that you grant the petition and remand. Thank you. Thank you very much, counsel. The case is taken under advisement.